## WILKINSON v. CHAMBER OF COMMERCE OF KINGSTON.

(Supreme Court, Special Term, Dutchess County.    July 20, 1911.)

1. CONTRACTS (§ 51*)—CONSIDERATION—SUFFICIENCY.
    Where a chamber of commerce of a city, for the purpose of inducing location of industries in the city, promised to pay plaintiff $2,500 if he would sell a certain property to a certain purchaser for $92,500 (the original price asked by plaintiff being $95,000), the sale was in part for defendant's benefit, and its offer was supported by a consideration.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 223, 224; Dec. Dig. § 51.*]

2. CONTRACTS (§ 10*)—MUTUALITY OF AGREEMENT.
    A trustee, having a manufacturing plant for sale and asking therefor $95,000, was offered $92,500, and defendant, the chamber of commerce of a city, promised plaintiff that if he would make the sale on such offer it would pay him $2,500, its object being to secure the location of the factory.  Held that, on the making of a written contract by the plaintiff and the purchaser before defendant's promise was withdrawn and in reliance on it, there was a mutuality of contract between plaintiff and defendant.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

3. CONTRACTS (§ 129*)—VALIDITY—PUBLIC POLICY—PARTICIPATION BY REFEREE IN BANKRUPTCY.
    A trustee in bankruptcy, having a factory for sale for $95,000 was offered $92,500.  Defendant, a chamber of commerce of a city, authorized its agent to expend if necessary $5,000 to induce the proposed purchaser to purchase the plant and locate it in said city, and the agent attended the meeting between the trustee and the purchaser, and agreed to pay $2,500 to the plaintiff if he would sell on the offer made, and the contract of sale so made was duly approved by the federal court.  Held, that the fact that the agent of the defendant was the referee in bankruptcy did not make the contract invalid as against public policy.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 616–632; Dec. Dig. § 129.*]

Action by Robert Wilkinson as trustee in bankruptcy against the Chamber of Commerce of Kingston.  Judgment for plaintiff.

Sullivan & Cromwell, for plaintiff.
Arthur C. Connelly and John J. Linson, for defendant.

TOMPKINS, J.  This action was tried before the court without a jury.  The facts are practically undisputed, and are as follows: In April, 1910, the plaintiff, as trustee in bankruptcy of the New York Car & Truck Company, was negotiating with one Wood for the sale to said Wood of the bankrupt's factory plant, which was located in the city of Kingston, N. Y.  The defendant was incorporated in February, 1910, under the membership corporation law, for the purpose, as stated in its certificate of incorporation, "to foster trade and commerce, and the interests of the citizens of the city of Kingston, N. Y., having a common trade, business, financial or professional interests," etc., one of its aims and purposes was to promote trade, manufactures, and commerce within the city of Kingston, and to encourage, and in proper cases to assist, worthy and desirable business enterprises to locate therein, and it had power to make contracts obligating

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

itself within the scope of its corporate purposes.   Prior to April 22, 1910, the defendant, by a resolution duly adopted, authorized Amos Van Etten, a lawyer living and having his office in the city of Kingston, and the referee in bankruptcy, to whom had been referred by the federal court the proceedings of the plaintiff as such trustee in bankruptcy, to expend $5,000, if necessary, to induce the said Wood to purchase the plant of the said New York Car & Truck Company from the plaintiff, and locate in Kingston.   With that authority from the defendant, Mr. Van Etten attended a meeting of the plaintiff, Mr. Wood, and his attorney at the Transportation Club in New York City on the 22d of April, 1910.   At that conference Mr. Wood finally agreed to pay $92,500 to the plaintiff for the plant, while the plaintiff was unwilling to sell for less than $95,000, and refused to accept Mr. Wood's offer of $92,500, whereupon Mr. Van Etten, acting for the defendant, said, in substance, that rather than see the deal fall through, he would pay the difference between them of $2,500 and thereupon did agree with the plaintiff to pay the sum of $2,500, which, added to the $92,500 that Wood offered to pay, made the $95,000, which was the lowest price at which plaintiff would sell.   The minds of the parties to the contemplated sale then met so far as the price was concerned, and the conference broke up.   It may be assumed that there was a tacit agreement between all the parties that the details of sale should be arranged by plaintiff and Wood.   On April 29, 1910, and before any withdrawal of the defendant's offer, and without any intimation from the defendant or its agent Van Etten that the offer to pay plaintiff $2,500 as a part consideration for the sale to Wood was to be withdrawn or would be repudiated, the plaintiff and Wood entered into a written agreement whereby the plaintiff agreed to sell, and the said Wood to buy, the said bankrupt's plant and property in the city of Kingston, for the said sum of $92,500, and by which written agreement all the terms of sale and the details thereof were fully stated, and thereafter said contract was approved by the United States court, and the terms thereof fully consummated by the parties thereto, and the property was taken over by Wood.   Subsequently, when a demand was made by plaintiff for the $2,500, the defendant refused to pay, and this action is the result.

I have said that the facts are practically undisputed, and if there be any question by either party as to any statement of fact that I have made, it is to be regarded as found by me as a matter of fact. In other words, I find the foregoing to be a true statement of the facts, and it seems to me that, upon these facts, the plaintiff is entitled to judgment.   I shall consider briefly the defenses urged.   They are, first, lack of consideration; second, want of mutuality; and, third, that the alleged agreement was void as against public policy, in that the person making it on behalf of the defendant was the referee in bankruptcy before whom that proceeding was pending, he having power to fix the fees and control the acts of said trustee.

[1] As to the first.   The plaintiff, in consideration of the defendant's promise to pay him $2,500, sold to Wood for $92,500 the property for which he was asking the sum of $95,000, and the consideration

moving from the plaintiff—i. e., the sale—was in part to and for the benefit of the defendant and the city of Kingston, in whose interest the defendant was acting, thereby accomplishing one of the primary objects of its incorporation. Even though Wood, the purchaser, be regarded as the only beneficiary of the consideration moving from the plaintiff that would be sufficient to uphold the defendant's promise, a citation of a single authority (and they are many) would seem to be sufficient and support this proposition. "It constitutes a sufficient consideration to support a contract, if the promisee in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do." Street v. Galt, 136 App. Div. 724, 121 N. Y. Supp. 514. This is elementary.

Second. The defendant claims that there was a lack of mutuality in the agreement between the three parties, as it was made on April 22d, when Mr. Van Etten was present. That is undoubtedly true in the sense that when the conference broke up that evening after the terms had been orally agreed to, and the defendant's oral promise had been given, there was no written memorandum of the agreement by which the plaintiff could have been legally held to carry out his part of the bargain, but later, and on the 29th of April, and while the defendant's offer to the plaintiff was still open and had not been withdrawn, and with that as part of the consideration, the plaintiff entered into a written contract with the purchaser Wood, by which he legally bound himself to sell the property for the price that had been agreed upon by the plaintiff Wood and the defendant on April 22d, and according to terms which were definitely fixed and stated in detail in the written contract, subject to the approval of the United States District Court, which was afterwards given.

[2] By the making of the written contract between plaintiff and Wood before defendant's promise was withdrawn, and relying upon the good faith of it, and reckoning it as a part of the consideration, there was a mutuality of contract between the parties to the said agreement and the obligation of the defendant to make good its promise became absolute. The written contract made April 22, 1910, was definite and certain in all its terms, and was made by the plaintiff in reliance upon the defendant's promise to pay $2,500 if the plaintiff would consummate the pending negotiations with Wood.

Third. Was the defendant's promise void as against public policy? Defendant's contention is that because its agent, who acted for it in making the agreement, was the referee in bankruptcy before whom the bankruptcy proceeding was pending, that the contract is not enforceable in law; the defendant's argument being, in effect, that the law should not countenance any dealing of a financial nature between a referee who is a judge of the court and a trustee who is an executive officer of the same court respecting the subject-matter of the trust, whether the parties assume to act as principals or agents, and whether the transaction result in profit or loss to the trust estate.

[3]. The only limitations upon a referee in bankruptcy are: (1) That he shall not act in cases in which he is directly or indirectly interested; (2) that he shall not practice as an attorney or counsel in

any bankruptcy proceeding; (3) that he shall not purchase directly or indirectly any property of an estate in bankruptcy.   None of these prohibitions of the bankruptcy law applies.   Mr. Van Etten did not purchase directly or indirectly any property from the trustee.   He only acted as the agent of the defendant for the sale of the property to a third party.   He was not practicing as an attorney or counselor in the bankruptcy proceeding, but was acting as the agent in fact of the defendant.   Besides, if he had acted in violation of law, or contrary to public policy in making the agreement with plaintiff, it is doubtful whether he or the defendant for which he acted, could avail themselves of his improper conduct.   However, it does not seem to me that there was any impropriety in Mr. Van Etten acting as the agent of the defendant, or that thereby he disqualified himself for the further discharge of his duties as referee.   The very most that can be said is that if Mr. Van Etten, by his participation in the negotiations and sale of the bankrupt's estate, disqualified himself as referee the United States District Court can send the matter to another referee.   In any event, and for any reason or no reason at all, the United States District Court can send the question of the trustee's fees and all other matter involved in the bankruptcy proceeding to a new referee.

There seems to be no merit in the defenses.   The defendant should be held to the contract which Mr. Van Etten made, and which, by the express action of the defendant he was authorized to make, and in reliance upon which plaintiff acted in selling to Wood.   Judgment for the plaintiff for $2,500, with interest from August 17, 1910, besides costs.